[No. 2331.]

## RAWLINGS v. CLARK.

**1.  Evidence—Negligence.**

In an action for wages due plaintiff from defendant, where defendant set up a counterclaim based on plaintiff's alleged negligence in leaving a load of wheat in a wagon standing in a corral whereby defendant's horses were killed by eating the wheat, evidence that defendant had been in the habit of leaving wheat in the wagon in the corral, was admissible upon the question of plaintiff's negligence.

**2.  Appellate Practice—Assignment of Error—Evidence.**

An assignment of error based on the rejection of evidence will not be considered where the assignment was not based on the question that was asked the witness, and the question that was asked was not assigned.

**3.  Evidence—Negligence.**

In an action by an employee against his employer for wages, where defendant set up a counterclaim based on plaintiff's negligence in leaving a load of wheat uncovered and exposed whereby defendant's horses were killed by eating the wheat, where there was no evidence that plaintiff had not taken proper precaution to protect the wheat, evidence of a statement made by plaintiff to the effect that the wheat was protected was properly rejected.

*Appeal from the County Court of Mesa County.*

Mr. SAMUEL G. McMULLIN, for appellant.

Mr. A. L. JEFFREY, for appellee.

THOMSON, P. J.

The appellant was the proprietor of a ranch in Mesa county, and the appellee was in his employ. The appellee brought this suit against him for wages due, and money expended at his request. The defendant admitted the plaintiff's claim in full; but inter-

posed a counterclaim in a larger amount. The facts alleged as constituting the counterclaim were that, on a certain day, the defendant sent the plaintiff to the town of DeBeque to bring a load of wheat to the ranch. Plaintiff accordingly brought the wheat, and, instead of unloading it and putting it into the granary, left the load standing in the corral. The next morning the defendant, discovering the wheat in the corral, directed the plaintiff to put it into the granary and then left for DeBeque. He returned after dark, and, supposing the wheat had been put into the granary, unhitched his horses and turned them into the corral. During the night they found the wheat, and ate of it until they foundered themselves, and three of them shortly afterwards died.

The testimony of the defendant as to his direction to the plaintiff, the failure to unload the wheat, the fact that some of it was eaten by the horses, the subsequent death of three of the horses and their value, substantially supported the statements of his counterclaim; however, he said he did not know how much of the wheat the horses had eaten, and was not acquainted with the condition produced by founder, but it was generally known that eating wheat would founder horses.

The defendant's testimony that he had directed the plaintiff to unload the wheat, was squarely contradicted by the latter. It was testified by the plaintiff, and denied by his adversary, that the defendant, himself, had on several occasions left wheat unloaded in the corral where it could be reached by the horses. There was no evidence that any considerable quantity of this wheat had been eaten; and an examination of the horses' intestines immediately after their death disclosed but slight traces of wheat. The counterclaim was disallowed and judgment given for the plaintiff, from which defendant has appealed.

We must accept the court's findings upon the conflicting testimony, and its judgment is conclusive upon us that the defendant did not direct the unloading of the wheat; that, therefore, in failing to unload it the plaintiff disobeyed no order, and that the defendant had a number of times, within the observation of the plaintiff, left loads of wheat exposed in the same manner that the plaintiff left this. Nothing can be claimed against the plaintiff on account of disobedience of instructions, for there were none. If it might be said that, even in the absence of instruction, his failure to unload the wheat constituted negligence, the defendant is hardly in a position to make the charge. If he set the example and gave no contrary orders, we do not see how he could complain that his employee did exactly what he did himself. He could not expect the defendant, without suggestion, to change his own method of conducting his business. Unless error prejudicial to the defendant was committed in the course of the trial, we see no way to avoid an affirmance of the judgment.

Error is assigned to rulings on evidence offered. Objection was made to the testimony showing the defendant's habit of leaving his wheat unloaded in the corral. Counsel has neglected to advise us of the specific grounds upon which he regards the evidence as inadmissible. It occurs to us that it was properly received on the question of the plaintiff's negligence. If, in the absence of specific instruction, he simply conformed his methods to those of his employer, the latter cannot justly complain of his conduct. It is assigned for error that the court refused to permit the defendant to testify in rebuttal as to what he saw witness Lightfoot do and find when he cut one of the horses open. No question was asked him either in chief or rebuttal that called for any such testimony. He was asked if he was present when the witness

Lightfoot cut one of the horses open, and he answered, "I was there when he started." After the question was answered, it was objected to as not being proper rebuttal, and the objection was sustained. But this ruling is not assigned for error, and as the obvious inference from the answer is that the defendant was present only when Lightfoot commenced, and was not present when the operation was completed, he could not have seen what Lightfoot found, and could not have answered the supposed question. But as the question which was asked is not assigned, and as the assignment made is not based on the question that was asked, there is nothing for us to consider. Complaint is also made that the court refused to allow Mrs. Rawlings to testify to a conversation with the defendant, "which would establish the fact that she believed and had a right to believe that the wheat was perfectly safe"; and also refused to allow one Helen Mathews to testify that on the evening of the defendant's return from DeBeque, and after his return, the plaintiff stated to Mrs. Rawlings that the load of wheat was "covered and protected, and had on high sideboards, so that stock could not get to it." The testimony was refused on the ground that it was not proper rebuttal. We do not think it necessary to decide whether it was proper rebuttal or not. There was no evidence that the wheat was not covered up and protected, or that it did not have on high sideboards. A party charging negligence must prove it, and if the wheat was not covered and protected, evidence of the fact should have been forthcoming in behalf of the defendant. Some such evidence was necessary to render the conversation admissible. And a statement that the wheat was safe, if made, was merely the expression of an opinion, which may have been formed from previous experience in connection with wheat left in the same place by the defendant,

and which may have been justified by that experience. As the defendant offered no evidence that the plaintiff had not taken proper precaution to protect the wheat, nor any evidence from which it might be gathered that the supposed statement was not true, or the opinion not substantially grounded, the proposed proof was immaterial and it was properly rejected.

Let the judgment be affirmed.

*Affirmed.*